# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 865 | **DATE** | 4/25/2001 |
| **CASE TITLE** | NORMAN P. WEXLER vs. BANC OF AMERICA AUTO FINANCE | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Banc America's motion to strike is moot. BancAmerica's motion for summary judgment is granted as to Count III. The remaining claims are dismissed without prejudice.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORMAN P. WEXLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 00 C 0865 |
| v. | ) | |
| | ) | |
| BANC OF AMERICA AUTO FINANCE CORP., | ) | Judge John W. Darrah |
| a foreign corporation, and VARGA, BERGER, | ) | |
| LEDSKY, HAYES & CASEY, P.C., an Illinois | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| BANCAMERICA AUTO FINANCE CORP., | ) | |
| | ) | |
| Counterplaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVE FOLEY CADILLAC, INC., and NORMAN | ) | |
| P. WEXLER, | ) | |
| | ) | |
| Counterdefendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Norman P. Wexler (Wexler,) brought suit against defendants, Banc of America Auto Finance Corporation[1] and Varga, Berger, Ledsky, Hayes & Casey[2]. Wexler alleges breach of contract, violation of the Illinois Consumer and Deceptive Practices Act, violation of the Fair Credit Reporting Act, and disparagement of credit. BancAmerica filed a counterclaim, alleging breach of

---

[1] BancAmerica was incorrectly sued as Banc of America Auto Finance Corp.

[2] Varga, Berger, Ledsky, Hayes & Casey were dismissed from the suit in August 2000.

contract and intentional interference with contract. Before this Court are the parties' cross-motions for summary judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of its claim on which it bears the burden of proof at trial. As such, it must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

In early 1999, Wexler decided to lease a car he had seen at Foley Cadillac. Rather than leasing the car directly to Wexler, Foley Cadillac arranged for Wexler to lease the car through Air One Auto Leasing (Air One). (Def.'s 56.1(a)(3) Statement ¶ 7). Wexler had previously purchased and leased several cars from Foley Cadillac. (Plaint.'s 56.1(a)(3) Statement ¶ 15). It was Foley Cadillac's idea to sell the car Wexler wanted to an independent leasing company, from whom Wexler would lease the car, because the lease payments would be lower than if Wexler leased the car through Foley Cadillac. (Def.'s 56.1(a)(3) Statement ¶ 8). Foley Cadillac agreed to sell the vehicle to Z Motorcars; then Air One would lease the vehicle to Wexler. Z Motorcars and Air One are owned by the same individual. (Plaint.'s 56.1(a)(3) Statement ¶ 18). Foley Cadillac had sold 30 to 40 vehicles to Air One to lease to third parties in 1998. (Def.'s 56.1(a)(3) Statement ¶ 9). Foley Cadillac never asked Air One to provide any information about its financial health, and Air One never provided such information to Foley Cadillac. (Id., at ¶ 11).

No later than February 15, 1999, Air One provided Foley Cadillac with a copy of a lease for Wexler's signature (the Air One Lease). At the same time, Foley Cadillac provided Air One with a bill of sale that was initialed by a Foley Cadillac employee. The bill of sale identified Z Motorcars as the purchaser. (Def.'s 56.1(a)(3) Statement ¶ 12). On February 15, 1999, Wexler executed the Air One Lease at Foley Cadillac. Foley Cadillac delivered a copy of the signed lease to Air One. (Id., at ¶ 13). On February 16, 1999, Wexler took possession of the vehicle subject to the Air One Lease. (Id., at ¶ 15). In February of 1999, Foley Cadillac reported to the manufacturer that the vehicle had been delivered to Air One on a fleet lease. (Id., at ¶ 17). Foley Cadillac knew that Air One could assign the Air One Lease and the vehicle to another party. (Id., at ¶ 18). At the time that Wexler took possession of the vehicle subject to the lease, Air One had not delivered a check to Foley Cadillac. Several days after Wexler received the vehicle, Air One sent a check to Foley Cadillac. Foley Cadillac did not present the check for payment because it was not certified. Prior to the signing of the Air One Lease, Foley Caddillac and Air One did not discuss any requirement that a certified check was required. (Id., at ¶¶ 19-21). No security agreement was entered between Foley Cadillac and Air One. (Id., at ¶ 22).

On February 16, 1999, Air One assigned its rights in the Air One Lease and the vehicle to BancAmerica, and BancAmerica paid Air One $46,059.01 via an electronic transfer. (Def.'s 56.1(a)(3) Statement ¶ 23). On or about March 4, 1999, Foley Cadillac informed Wexler that Air One had not paid for the vehicle. (Id., at ¶ 24). Foley Cadillac never demanded the return of the vehicle from Wexler or Air One. (Id., at ¶ 25). On March 24, 1999, Wexler, as Foley Cadillac's attorney, advised BancAmerica of Foley Cadillac's position as to the lease transaction. Foley Cadillac took the position that because Air One had not paid Foley Cadillac for the car, the Air One

3

Lease was invalid. (Id., at ¶ 28).

On March 30, 1999, Wexler and Foley Cadillac entered into a different lease for the same vehicle. Foley Cadillac agreed to the second lease because Wexler advised Foley Cadillac that he would not recognize any dealings with Air One or BancAmerica. (Id., at ¶ 30). At the time the second lease was entered into, Wexler had already received a payment schedule from BancAmerica and was aware that BancAmerica claimed an interest in the Air One Lease and the vehicle. (Id., at ¶ 31). Wexler had not made any payments to BancAmerica and informed the bank that he did not intend to return the vehicle to BancAmerica at the end of the term set forth in the Air One Lease. (Id., at ¶ 35).

In February 1999, BancAmerica reported the Air One Lease to credit reporting agencies. (Plaint.'s 56.1(a)(3) Statement ¶ 41). In February of 2000, BancAmerica contacted credit reporting agencies to remove the Air One Lease from Wexler's credit history pending resolution of this case. The Air One Lease was removed from Wexler's credit report that same month. (Def.'s 56.1(a)(3) Statement ¶¶ 36-37). Wexler contends that as a result of the listing of the Air One Lease with credit reporting agencies, he was denied credit from three credit card issuers. (Id., at ¶ 40).

Initially, BancAmerica has moved to strike certain portions of counterdefendants' response to BancAmerica's statement of facts, portions of counterdefendants' statements of facts, and exhibits to these documents. The Court has carefully reviewed all the materials submitted by the parties and has relied upon only those facts properly supported pursuant to Federal Rule of Federal Procedure 56. Accordingly, BancAmerica's Motion to Strike is moot.

BancAmerica argues that summary judgment as to Wexler's claim brought pursuant to the Fair Credit Reporting Act (FCRA) is proper because he cannot maintain a private right of action for

4

violations of 15 U.S.C. § 1681s-2(a). Wexler does not dispute that a private right of action does not exist under § 1681s-2(a). Wexler argues that he brings his action pursuant to § 1681s-2(b), which does allow a right to a private cause of action.

Individual consumers have a private right of action against a furnisher of information pursuant to §1681s-2(b) of the FCRA. *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 926 (N.D.Ill. 2000) (*Dornhecker*). The duties created by subsection (b) arise only after the furnisher of information receives notice from a consumer reporting agency that a consumer is disputing the credit information. 42 U.S.C. § 1681s-2(b); *Dornhecker*, 99 F.Supp.2d at 925.

Here, Wexler has not provided any facts, and did not plead such facts, demonstrating that BancAmerica received notice from a consumer reporting agency that Wexler was disputing the credit information as required by subsection (b). 42 U.S.C. § 1681s-2(b); *Dornhecker*, 99 F.Supp.2d at 925. Wexler informed BancAmerica that he believed the credit information was incorrect, but there are no facts demonstrating a consumer reporting agency informed BancAmerica of a dispute in the credit information. Accordingly, BancAmerica's Motion for Summary Judgment as to Wexler's FCRA claim (Count III) is granted.

Furthermore, this Court has jurisdiction over the remaining state law claims through pendent jurisdiction. Because summary judgment is awarded to defendant on the federal statute claim, the remaining state law claims are no longer pendent to any federal claim and must be dismissed without further proceedings. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Kennedy v. Schoenberg, Fisher, & Newman*, 140 F.3d 716, 727 (7th Cir. 1998).

For the reasons stated above, BancAmerica's Motion to Strike is moot. BancAmerica's Motion for Summary Judgment is granted as to Count III. The remaining claims are dismissed without prejudice.

Dated: April 25, 2001

_____
JOHN W. DARRAH
United States District Judge